IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| XYZ CORPORATION,<br><br>   Plaintiff,<br><br>v.<br><br>THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED IN SCHEDULE "A" HERETO,<br><br>   Defendants. | Case No.<br><br><br>**COMPLAINT FOR PATENT INFRINGEMENT**<br><br><br>**Jury Trial Demanded** |

## COMPLAINT

Plaintiff ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ also identified in initial filings in this action as XYZ Corporation ("Plaintiff") hereby brings the present action for patent infringement against the Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associations identified on Schedule "A" hereto (collectively, the "Defendants) and in support of his claims states as follows:

## JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction over Plaintiff's claims pursuant to the provisions of the Patent Act, 35 U.S.C. § 1 *et seq.*, 28 U.S.C. § 1338(a)-(b) (exclusive patent claim jurisdiction), and 28 U.S.C. § 1331 (original federal question jurisdiction). This Court has supplemental jurisdiction over Plaintiff's Illinois state common law unjust enrichment claim and Illinois state unfair competition claim pursuant to 28 U.S.C. § 1367(a) because those claims are so related to the federal claims that they form part of the same case or controversy.

1

COMPLAINT FOR PATENT INFRINGEMENT                  Case No. 1:25-cv-

2. This Court may exercise personal jurisdiction over each Defendant because each Defendant directly targets business activities towards consumers throughout the United States, including Illinois, through e-commerce stores on the third-party online marketplace platform, Amazon (the "Platform") operating under the seller aliases identified in Schedule "A" (the "Seller Aliases") attached hereto as **Exhibit 1**. Specifically, the Defendants have targeted sales to the United States by operating these e-commerce stores (the "Online Stores") that target United States consumers, offering to ship to the United States, accepting payment in U.S. dollars, offering to sell and selling products which infringe Plaintiff's patented invention, as described below, to residents of Illinois.

3. Furthermore, the common law violations under Illinois law provide a basis for long-arm jurisdiction over each Defendant as each Defendant is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiffs substantial injury in the State of Illinois

4. Each Defendant is properly subject to jurisdiction in the United States because each is a foreign entity with sufficient contacts here, as they systematically offer counterfeit items through the Amazon platform. This systematic offering of counterfeit items for sale makes it reasonably foreseeable that they would be called to answer in a court within the United States, ensuring that the exercise of jurisdiction in this Court aligns with due process.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the Defendants are subject to this Court's personal jurisdiction and none of the Defendants, based on a pre-suit investigation, are residents of the United States. Further, each Defendant is engaged in infringing activities and causing harm within the Northern District of Illinois by advertising, offering to sell,

selling and/or shipping infringing products to consumers in this district. This Court is the proper jurisdiction and venue under Federal Rule of Civil Procedure 4(k).

## INTRODUCTION

6. This action has been filed by Plaintiff to combat online infringers who trade upon Plaintiff's patented invention by making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use of the same unauthorized and unlicensed product, namely the ▮▮▮▮▮▮▮▮▮▮ ("the Accused Products"), that infringe Plaintiff's patent rights. Specifically, Plaintiff has filed this action to stop Defendants' infringement of its patented invention, as well as to protect unknowing consumers from purchasing the Accused Products.

7. Infringers, such as the Defendants, take advantage of the anonymity and mass reach afforded by the Internet and the cover provided by international borders, to violate a rightsholders intellectual property rights with impunity. Defendants attempt to avoid liability by operating under one or more Seller Aliases to conceal their identities, locations, and the full scope and interworking of their infringing operation.

8. Plaintiff has been, and continues to be, irreparably damaged from the loss of his lawful patent rights to exclude others from making, using, selling, offering for sale, and importing his patented invention and through loss of market share and erosion of Plaintiff's patent rights because of Defendants' actions and therefore seeks injunctive and monetary relief.

## THE PARTIES

### Plaintiff

9. Plaintiff ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

10. Plaintiff is the owner of all rights, title, and interest in ███████████ ███████████████████████████████████████████████████████████ ██████████

11. Plaintiff obtained ownership of the ███████████████████████ ████████████████████

12. ████████████████████████████████████

13. ████████████████████████████

14. ██████████████████████████, was valid and enforceable at all times relevant to this action, and is entitled to a presumption of validity under 35 U.S.C. § 282.

15. Plaintiff is engaged in the business of designing, sourcing, and marketing ██████ ███████████████████████ Plaintiff's product that embodies the ████████ can be purchased from Plaintiff's own website and from Plaintiff's e-commerce store on the Platform. ████████████████████████████████████

16. ███████████████████████████████████████

███████████████████████████████



**Defendants**

18. Defendants are individuals and business entities of unknown makeup who own and/or operate one or more e-commerce stores including at least the Online Stores identified on Schedule "A". On information and belief, Defendants reside and/or operate outside the United States in foreign jurisdictions with lax intellectual property enforcement systems or redistribute products from the same or similar sources in those locations.

19. Plaintiff's pre-suit investigation has revealed that each of the Defendants has provided false or inaccurate business names and addresses when they registered for their e-commerce stores. Such tactics are used to conceal their true identities, the full scope of their infringing operations and their relatedness to the other Defendants. As such, this makes it virtually

impossible for Plaintiff to discover the Defendants' true identities and the interworking of their infringement network scheme.

20. Most third-party online marketplace platforms, including the Platform, do not subject new sellers to verification or require them to confirm their identities, which allows infringers to use fake or inaccurate names, business information, and addresses when creating their e-commerce stores on these online marketplace platforms.[1] These third-party online marketplace platforms also generally do not require a seller to identify any underlying business entity, thus infringers are able to create multiple profiles and e-commerce stores that appear unrelated even though they are commonly owned and operated.[2]

## JOINDER OF THE DEFENDANTS

21. Generally, defendants may be joined in a single action if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(a)(2).

22. However, joinder in patent cases is governed by 35 U.S.C. § 299, which allows joinder of defendants if: (1) relief in the same transaction or occurrence relates to the offering for sale or selling of the same accused product or process; and (2) questions of fact common to all defendants will arise in the action. *See* 35 U.S.C. § 299(a).

23. Because "transaction" and "occurrence" are connected disjunctively in Rule 20, cannons of construction dictate that they be given separate meanings. *See Mosley v. General Motors Corp.*, 497 F.2d 1330, 1332-33 (8th Cir. 1974). The general meaning of "occurrence" or

---

[1] U.S. Department of Homeland Security, Report on Combating Trafficking in Counterfeit and Pirated Goods, January 24, 2020, (available at:
https://www.dhs.gov/sites/default/files/publications/20_0124_plcy_counterfeit-pirated-goods-report_01.pdf).
[2] *Id*. at 39.

whether two products are the "same" means something that simply happens or appears and is not necessarily the product of joint or coordinated motion. *See Id.; Spin Master Ltd. et al. v. The P'ships, et al.*, No. 1:22-cv-03904 (N.D. Ill. Nov. 7, 2022) (finding joinder proper where plaintiffs' claims arose out of the same occurrence or series of occurrences even if not the same transaction or series of transactions). "[D]eciding whether a product is the 'same' for purposes of joinder under § 299 entails applying a less exacting standard than simply looking to whether a defendant's product is literally identical to the product it allegedly copies." *Aquapaw Brands LLC v. Flopet*, No. 21-cv-00988, 2022 U.S. Dist. LEXIS 134797, at *6 (W.D. Pa. July 29, 2022) (citing *In re Apple Inc.*, 650 F. App'x 771, 774 (Fed. Cir. 2016) and finding that despite cosmetic differences between the different defendants' products, they nonetheless sold the "same" product relevant to the asserted patent). Instead, the proper question is whether "the products are the same in all respects relevant to the patent." *Id*; *see also SitePro, Inc. v. WaterBridge Res., LLC*, No. 6:23-cv-00115-ADA-DTG, 2024 U.S. Dist. LEXIS 72523, at *13 (W.D. Tex. Apr. 22, 2024) (ensuring that the products do not need to be exactly the same to meet the crite1ia outlined in 35 U.S.C. § 299(a)).

24. This is not a case where joinder is sought based solely on allegations that each Defendant has infringed the same patent, nor does it solely rely on allegations of patent infringement. Rather, the accused products are the same in all respects relevant to the ▇▇▇▇. Specifically, each infringing product features a circuit board, a fan in the same housing as the circuit board and battery, thereby infringing Plaintiff's Patent in the same manner.

25. Further, the Federal Circuit has upheld decisions not to sever defendants in similar situations noting that "judicial economy plays a paramount role in trying to maintain an orderly, effective, administration of justice and having one trial court decide all of these claims clearly furthers that objective. Also, the district court noted that, in this case, 'adjudicating infringement

... will involve substantially overlapping question of law or fact.'" *In re Google, Inc.,* 412 Fed. Appx. 295, 296 (Fed. Cir. 2011). The 23 defendants in *In re Google,* like the Defendants here, were each accused of infringing the same patents and the District Court denied a request to sever holding instead that joinder was proper because severance would not promote judicial economy in view of the need to construe the patent claims and evaluate them in view of the prior art. *Eolas Techs., Inc. v. Adobe Sys., Inc.,* No. 09-CV-446, 2010 U.S. Dist. LEXIS 104125, at* 15 (E.D. Tex. Sept. 28, 2010). Thus, the District Court held, determining defendant's liability would involve substantially overlapping questions of law and fact and it would waste judicial and party resources to have those issues decided by multiple courts and could lead to inconsistent ruling. *Id.* Therefore, the Plaintiff has properly joined defendants under Fed. R. Civ. P. 20(a)(2) and 35 U.S.C. § 299(a).

26. The Online Stores operating under the Seller Aliases share identifiers establishing that a logical relationship exists between them, and that Defendants' infringing operation arises out of the same transaction, occurrence, or series of transactions or occurrences.

27. As mentioned above, such seller alias registration patterns are one of many common tactics used by e-commerce store operators like the Defendants to conceal their identities and the full scope and interworking of their infringement operation, and to avoid being shut down. Operating under various seller aliases also gives the impression that the Defendants are multiple, separate entities when listed on a Schedule "A" enforcement action. By giving the appearance that the seller aliases are all unrelated entities, infringers, like the Defendants, they know they are creating a potential joinder issue for any multi-defendant enforcement effort, thereby further thwarting facing liability.

28. The Defendants' intentional technique of hiding behind multiple Seller Aliases to make enforcement more difficult is used to perpetuate illegal patent infringing activities. Absent

joinder of each Defendant, the Defendants' strategy to avoid liability will be effective because individual lawsuits are costly to file and burdensome to the courts. Hence, each Defendant is joined in this action because it is highly likely that they are working with the other Defendants or are not separate entities, and that they are only listed as separate entities to avoid enforcement of U.S. patent law.

29. Each of the Defendants unfairly benefits from operating in the midst of a swarm of other infringers, each individually, and all collectively, violating Plaintiff's ▮▮▮▮ and/or through misuse of e-commerce. This is a strategy that infringers use to evade enforcement efforts, thus keeping their operations moving, because the swarm is too large to go after individually, and because as one gets shut down, the infringer can open five more, and transfer money in between them if noticed of a suit like this one.

## DEFENDANTS' UNLAWFUL CONDUCT

30. The success of the Plaintiff's ▮▮▮▮ has resulted in significant infringement of ▮▮▮▮. Because of this, Plaintiff has implemented an anti-infringement program that involves investigating suspicious websites and online marketplace listings identified in proactive Internet sweeps. Plaintiff has identified numerous e-commerce stores on the Platform offering for sale ▮▮▮▮ that infringe the ▮▮▮▮, including the Online Stores. *See* the Seller Aliases on Schedule "A". Screenshots of each Defendant's ▮▮▮▮ attached hereto as **Exhibit 3**.

31. Defendants have targeted sales to Illinois residents by setting up and operating the Online Stores that target United States consumers using one or more Seller Alias, offer shipping

to the United States, including Illinois, accept payment in U.S. dollars and, sell and/or offer for sale Accused Products to residents of Illinois.

32. Online marketplace platforms like the Platform used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020) attached as **Exhibit 4**; *see also* report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), attached as **Exhibit 5**, and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and that "[t]he ability to rapidly proliferate third-party online marketplaces greatly complicates enforcement efforts, especially for intellectual property rights holders." *See* Exhibit 5 at p. 22 and 11, respectively. Infringers hedge against the risk of being caught and having their websites taken down from an e-commerce platform by establishing multiple virtual storefronts. *Id.* at p. 22. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated. *See* Exhibit 5 at p. 39. Further, "[e]-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters." *See* Exhibit 4 at 186-187. Specifically, brand owners are forced to "suffer through a long and convoluted notice and takedown procedure only [for the counterfeit seller] to reappear under a new false name and address in short order." *Id*. at p. 161.

33. The very same concerns regarding anonymity, multi-storefront infringers, and slow and ineffective notice and takedown procedures impact Plaintiff's enforcement efforts when trying to assert its patent rights.

34. Further, e-commerce store operators like Defendants communicate with each other through WeChat groups, QQ.com chat rooms and utilize websites, like sellerdefense.cn, that provide tactics for operating multiple online marketplace accounts and evading detection by intellectual property owners. Websites like sellerdefense.cn also tip off e-commerce store operators like Defendants of new intellectual property infringement lawsuits filed by intellectual property owners, such as Plaintiff, and recommend that e-commerce operators cease their infringing activity, liquidate their associated financial accounts, and change the payment processors that they currently use to accept payments in their online stores.

35. Infringers such as Defendants also typically operate under multiple payment accounts so that they can continue operation despite Plaintiff's enforcement. Infringers like the Defendants often maintain offshore bank accounts and regularly move funds from their financial accounts to offshore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to plaintiffs.

36. Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Accused Products in the same transaction, occurrence, or series of transactions or occurrences Defendants, without any authorization or license from Plaintiff, have knowingly and willfully offered for sale, sold, and/or imported into the United States for subsequent resale or use, products that infringe directly and/or indirectly the ▮▮▮▮▮ and continue to do so via the Online Stores.

37. Defendants' unauthorized use and/or manufacturing of the invention claimed in the ▇▇▇▇ in connection with the distribution, offering for sale, and sale of the infringing ▇▇▇▇▇▇▇▇ into the United States, including Illinois, is likely to cause, and has caused, loss of market share and erosion of Plaintiff's patent rights and is irreparably harming Plaintiff.

## COUNT I
## PATENT INFRINGEMENT (35 U.S.C. § 271)

38. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in Paragraphs 1-37 above.

39. As shown, Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Accused Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Plaintiff, have jointly and severally, knowingly and willfully offered for sale, sold, and/or imported into the United States for subsequent resale or use the same product that infringes directly and/or indirectly Plaintiff's Patent.

40. Each Defendant sells its Accused Products to consumers in the United States.

41. Each of the Accused Products being sold by each Defendant incorporates each of the elements of at least one claim in the ▇▇▇▇ Accordingly, the Accused Products infringe upon the Plaintiff's Patent.

42. More particularly, upon information and belief, Defendants have infringed and continue to infringe at least Claim 1 of the ▇▇▇▇ because the Accused Products include every limitation of Claim 1.

43. Defendants do not have authority or license from Plaintiff to sell the Accused Products.

44. Sales of the Accused Products cause additional harm to Plaintiff because sales of the Accused Products are competitive with products imported, sold, and offered for sale in the United States by Plaintiff.

45. As a direct and proximate result of Defendants' infringement, Plaintiff has suffered irreparable harm and monetary and other damages in an amount to be determined. Defendants' infringement of the Plaintiff's Patent in connection with the offering to sell, selling, or importing of products that infringe the Plaintiff's Patent, including such acts into the State of Illinois, is irreparably harming Plaintiff. Defendants' wrongful conduct has caused Plaintiff to suffer irreparable harm resulting from the loss of its lawful patent rights to exclude others from making, using, selling, offering for sale, and importing the patented design as well as the lost sales and loss of repeat sales stemming from the infringing acts.

46. Plaintiff is therefore entitled to preliminary and permanent injunctive relief restraining and enjoining Defendant from infringing the patent-in-suit.

47. The Defendants' acts of infringement of the ▮▮▮▮▮ have caused and will continue to cause Plaintiff damages for which Plaintiff is entitled to compensation pursuant to 35 U.S.C. § 284.

48. The Defendants' acts of infringement of the ▮▮▮▮▮ have caused and will continue to cause Plaintiff immediate and irreparable harm unless such infringing activities are enjoined by this Court pursuant to 35 U.S.C. § 283. Plaintiff has no adequate remedy at law.

49. This case is exceptional and, therefore, Plaintiff is entitled to an award of attorneys' fees pursuant to 35 U.S.C. § 285.

50. Plaintiff committed the conduct alleged herein maliciously, oppressively, and/or fraudulently, with the wrongful intent of injuring Plaintiff, and with willful and conscious

disregard of Plaintiff's rights. Plaintiff is, therefore, entitled to an award of punitive and exemplary damages.

## COUNT II
### UNJUST ENRICHMENT - ILLINOIS STATE COMMON LAW

51. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in Paragraphs 1-50 above.

52. Plaintiff and the named inventor have spent substantial time, money, and resources in development of the invention claimed in the ▮▮▮▮▮▮.

53. Plaintiff's Patent greatly improves upon ▮▮▮▮▮▮▮▮▮▮▮▮.

54. Plaintiff also spent substantial time, money, and resources in the development of Plaintiff's Products, including selling Plaintiff's Products directly to consumers and through authorized retailers.

55. Defendants traded upon Plaintiff's research and development by selling products which infringed upon the ▮▮▮▮▮▮.

56. Defendants, by selling the Accused Products, eroded Plaintiffs market share in the ▮▮▮▮▮▮▮▮▮▮.

57. The Accused Products include the unique elements components disclosed in Plaintiff's Patent.

58. Defendants knew or should have known that the Accused Products they were selling infringed upon Plaintiff's Patent and by selling those products they were eroding Plaintiff's market share and trading upon its research and development.

59. Defendants, by offering for sale and selling the Accused Products, improved their own good will and market share by trading upon the good will, reputation, research and development of Plaintiff.

COMPLAINT FOR PATENT INFRINGEMENT    Case No. 1:25-cv-

60. Defendants, by offering for sale and selling the Accused Products through online marketplaces without having any physical location and limited financial accounts in the United States, seek to compete for customers in the U.S. market without subjecting themselves to the laws of the United States or notions of fair competition.

61. On information and belief, Defendants have sold the Accused Products, further eroding Plaintiff's market share and trading upon its good will, reputation, research, and development.

62. Plaintiff has never received any relief for the erosion to its market share or any compensation from Defendants for their use of Plaintiff's good will, reputation, research, and development.

63. Defendants have been unjustly enriched because they have denied Plaintiff access to customers it would have otherwise had by participating in what shou]d have been Plaintiff's exclusive market by selling products directly to consumers, products which infringed the ▮▮ and competing against Plaintiff in the ▮▮.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment as follows:

1. Adjudging that Defendants have infringed the ▮▮ in violation of 35 U.S.C. § 271;

2. Granting an injunction permanently enjoining Defendants, their employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, and all of those in active concert and participation with any of the foregoing persons or entities, from infringing, contributing to the infringement of, or inducing infringement of the ▮▮

3. Ordering Defendants to account and pay damages adequate to compensate Plaintiff for Defendants' infringement of the ▮▮▮▮▮▮ including for any infringing acts not presented at trial and pre-judgment and post-judgment interest and costs, pursuant to 35 U.S.C. § 284;

4. Ordering that the damages award be increased up to three times the actual amount assessed, pursuant to 35 U.S.C. § 284;

5. Awarding Plaintiff its reasonable costs and fees, including attorneys' fees pursuant to 35 U.S.C. § 285;

6. A finding that Defendants were unjustly enriched under Illinois common law.

7. Awarding Plaintiff such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues that are so triable.

DATED: October 16, 2025

Respectfully submitted,

By: /s/ *William R. Brees*
William R. Brees (FL Bar No. 98886)
william@bayramoglu-legal.com
**BAYRAMOGLU LAW OFFICES LLC**
233 S. Wacker Drive, 44th Floor, #57
Chicago, IL 60606
Tel: (702) 462–5973

*Counsel for Plaintiff*