**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| XYZ CORPORATION,<br><br>    Plaintiff,<br><br>v.<br><br>THE INDIVIDUALS, CORPORATIONS,<br>LIMITED LIABILITY COMPANIES,<br>PARTNERSHIPS AND UNINCORPORATED<br>ASSOCIATIONS IDENTIFIED IN<br>SCHEDULE "A" HERETO,<br><br>    Defendants. | **Case No. 1:25-cv-12683-JLA-AB**<br><br><br><br>**Honorable Jorge L. Alonso**<br><br>**Magistrate Albert Berry, III** |

## PLAINTIFF'S *EX PARTE* MOTION FOR ELECTRONIC SERVICE OF PROCESS BY E-MAIL AND/OR PUBLICATION ON DEFENDANTS

   Plaintiff XYZ Corporation ("Plaintiff"), by and through undersigned counsel, pursuant to Rule 4(f)(3) of the Federal Rules of Civil Procedure, and not inconsistent with the Hague Convention, moves on an *ex parte* basis for an order authorizing electronic service of process on the Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associations identified on Schedule "A" to the Complaint (collectively, the "Defendants"), and in support thereof states as follows:

### I.  INTRODUCTION

   Plaintiff initiated this action to stop Defendants unfair methods of competition and enforce its patents rights associated with ███████████████████████. As alleged in the Complaint, each of the Defendants has promoted, marketed, offered for sale, sold and/or imported into the United States ████████ products that violate Plaintiff's rights to the ████ (the "Infringing Products"), through their e-commerce stores (the "Online Stores") maintained on

1

the Amazon marketplace platform (the "Online Platform"). The Online Platform permits Defendants to obscure their identities, thus allowing Defendants to make their products available to consumers without exposing contact information or, at best, providing only minimal contact information. As a result, Plaintiff has limited contact information of questionable accuracy for Defendants. Nevertheless, based on the operation of their Online Stores, Plaintiff believes the Defendants are foreign entities or individuals located in China or Hong Kong.

In accordance with Federal Rule of Civil Procedure 4(f)(3), Plaintiff requests an Order authorizing service of process on Defendants via electronic mail ("e-mail") and via website posting. Alternate service by e-mail, messaging service, or by posting on a designated website are appropriate and necessary in this case, because the Defendants (1) are foreign sellers believed to be located in China and Hong Kong, (2) operate via the Internet, and (3) rely on electronic communications to operate their Online Stores. As such, Plaintiff has the ability to contact Defendants directly and provide notice of Plaintiff's claims against them electronically. Additionally, Plaintiff has created a website and will be posting copies of the Complaint, this instant Motion, and all other documents filed in this action.

## II.   **STATEMENT OF FACTS**

1.     E-commerce sellers generally must maintain accurate e-mail addresses where their marketplace platform administrator and payment processor may communicate with them regarding issues related to the maintenance of their e-commerce store accounts and transfer of funds for the payment of goods. Declaration of William Brees (the "Brees Decl."), attached hereto, ¶¶ 8, 11, 12].

2.      Plaintiff has created a website with  the  URL  http://blointernetenforcement.com (the "Publication Website"), such that anyone accessing Publication Website will find copies of all documents filed in this action. [Brees Decl. ¶ 13].

3.      The Defendants use the non-party Online Platform to support and drive consumer traffic to their Infringing Products. Defendants use the Online Platform to sell the Infringing Products from foreign countries such as China to consumers in the United States. The Defendants use their Online Stores operating under their respective seller identification names on the Online Platform as identified on Schedule "A" to the Complaint (the "Seller IDs"). [Brees Decl. ¶ 6].

4.      All the Defendants are required to provide contact information, including at least an e-mail address, to the Online Platform in order to maintain contact, obtain information and receive payments for sales made on the Online Platform. In Plaintiff's Motion for Temporary Restraining Order, Including a Temporary Asset Restraint, and Expedited Discovery to be filed in this case, Plaintiff will request that the Court order the Online Platform to disclose the identities of the Defendants, including their e-mail addresses, to the Plaintiff so that those e-mail addresses can be used to notify the Defendants with the relevant documents attached for Defendants. [Brees Decl. ¶ 7].

5.      Each Defendant has provided an address that cannot be confirmed as a suitable address for service of process. [Brees Decl. ¶ 10]

6.      Defendants have structured their Online Stores so that the means for customers to purchase Defendants' infringing products at issue is by placing an order electronically. The Defendants take and confirm orders online and rely on electronic means to receive payment. Clearly, the Defendants depend on electronic means as reliable forms of contact. [Brees Decl. ¶ 11].

3

PLAINTIFF'S MOTION FOR ELECTRONIC                                    Case No. 1:25-cv-12683-JLA-AB
SERVICE OF PROCESS

7.      Each Defendant will be provided with notice of this action electronically, with the relevant documents attached to such email. Plaintiff will send the Complaint and Summons to Defendants via their corresponding e-mail addresses, customer service e-mail addresses and/or onsite contact forms or via the Online Platform that the Defendants use to conduct their commercial transactions via the Seller IDs. [Brees Decl. ¶ 12].

8.      Finally, Plaintiff will be able to provide each Defendant notice of this action via public announcement on Plaintiff's Publication Website whereon copies of the Complaint, the instant Motion, and all other pleadings, documents, and orders issued in this action will be posted such that anyone who accesses the Publication Website will find copies of all documents filed in this action. [Brees Decl. ¶ 13]. The URL for the Publication Website will be provided to Defendants via their known e-mail addresses and will be included as part of service of process in this matter. [*Id*.].

9.      The alternative service in question, internet publication and email, is consistent with the Hague Convention, is not against any international agreement, and is the most efficient and effective means available.

### III.     **ARGUMENT**

Pursuant to Federal Rule of Civil Procedure 4(h)(2), a foreign partnership or other unincorporated association may be served with process in any manner prescribed by Rule 4(f) for serving foreign individuals. Rule 4(f)(3) allows a district court to authorize an alternate method for service to be affected upon a foreign defendant, provided that it is not prohibited by international agreement and is reasonably calculated to give notice to the defendant.

Alternate service of process via e-mail and by posting on the Publication Website are appropriate given that the Defendants have established the Online Stores by which they rely on

electronic communications for their operation. Further, such alternative service is reasonably calculated under all circumstances to apprise the Defendants of the pendency of the action and allow the Defendants to present their objections, complying with due process. To satisfy the due process requirement, "the method of service crafted by the district court must be 'reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Rio Prop, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1016 (9th Cir. 2002) (citing *Mullave v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

Court-directed service pursuant to Rule 4(f)(3) is appropriate when "there is a need for speed that cannot be met by following the Hague Convention methods." *Strabala*, 318 F.R.D. at 114. In this case, expeditious service to the Defendants is warranted due to the protracted Hague Convention process and the imminent harm faced by Plaintiff. Plaintiff's ███████ product is well established and welcomed on Amazon, and the Amazon marketplace constitutes Plaintiff's primary sales channel into the United States.

Further, the Hague Convention service process would take an inordinately long time to complete. Service of process through the Hague Convention is expected to take eighteen months to two years to complete. In fact, in granting alternate service, courts have noted that the Ministry of China indicates that service of process may take more than two years to complete. *Victaulic Co. v Allied Rubber & Gasket Co*., 2020 U.S. Dist. LEXIS 82150, fn. 3 (S.D. Cal. 2020). Any delay in pushing this case forward would cause Plaintiff irreparable harm as Defendants are directly competing with Plaintiff on the Online Platform and are weakening Plaintiff's rights to exclude others from practicing the ██████. Thus, alternate service under Rule 4(f)(3) would be appropriate to prevent the harm to Plaintiffs and to move this case forward.

A. **The Court May Authorize Service via Electronic Mail and Website Posting Pursuant to Federal Rule of Civil Procedure 4(f)(3).**

Rule 4(f)(3) of the Federal Rules of Civil Procedure allows courts to permit alternative means of service if the party seeking to use an alternative means obtains permission of the court and those "other means [are] not prohibited by international agreement." Fed. R. Civ. P. 4(f)(3). Defendants are foreign business believed to be domiciled in China, a country that, along with the United States, is a signatory to the Hague Convention and its agreed means of service. But there "is no indication of a hierarchy in the text or structure of Rule 4(f)." *Flava Works, Inc. v. Does 1-26*, No. 12 C 5844, 2013 WL 1751468, at *7 (N.D. Ill. Apr. 19, 2013). Alternative service under Rule 4(f)(3) is neither a "last resort" nor "extraordinary relief," but is rather one means among several by which an international defendant may be served. *Id*. So long as the proposed method of service is "not prohibited by international agreement[,]" Rule 4(f)(3) does not require a party to attempt service under the Convention before seeking a court order directing alternative service. See *Strabala v. Zhang*, 318 F.R.D. 81, 114 (N.D. Ill. 2016) (collecting cases).

Additionally, Rule 4 does not require a party attempt service of process by those methods enumerated under subsections (f)(1) and (f)(2), including by diplomatic channels and letters rogatory, before petitioning the court for alternative relief under subsection 4(f)(3). *See Rio Props.*, 284 F.3d at 1015-16; discussion *supra*. Rather, Plaintiff need only sow a justification for allowing alternative service, not that other methods of service would be ineffective.

In the instant case, court-ordered service under Rule 4(f)(3) is warranted at least because there is a need for speedy service that cannot be met by service under the Hague Convention. *See Strabala* at 318 F.R.D. at 114. Simultaneously with this Motion, Plaintiff has moved for a temporary restraining order. As outlined in that motion, and similarly supported in the Complaint itself, there is ongoing infringement and a reasonable concern that the Defendants will disappear

6

with their ill-gotten gains in the absence of prompt injunctive relief. Further, for the Defendants to appear and present any arguments in opposition to any preliminary injunction, they first need to be served. Service under Hague Convention can take many months or even a year and will impede the Court's ability to address the request for injunctive relief in a timely manner.

Further, the particular facts of this case warrant permitting court-ordered service under Rule 4(f)(3) because Plaintiff has no way to confirm the facts necessary for successful service under the Hague Convention. Specifically, while Plaintiff has been able to discover limited contact information for the Defendants, namely the fictious or incomplete addresses provided on their Online Stores, Plaintiff cannot confirm the Defendants' actual corporate status. In particular, Plaintiff cannot confirm whether the Defendants are corporations, limited liability companies, or even individuals that control the subject Online Stores and online identities (Seller IDs) and merely do business under an assumed business name. It would simply be impossible for Plaintiff to complete the paperwork for service under the Hague Convention with a significant degree of confidence that the paperwork would not be rejected several months later for being incomplete or inaccurate.

E-mail is a reliable method of service in this case because Defendants have provided their e-mail address to Amazon and ensured that these e-mail addresses remain accurate and current. As such, this is precisely a situation that justifies an order directing that service be affected by alternative means. See *Ouyeinc Ltd. v. Alucy*, No. 20 C 3490, at *3 (N.D. Ill. June 25, 2021) ("courts have routinely upheld service by email" in infringement actions where online stores "business appeared to be conducted entirely through electronic communications") (cleaned up) (citing *Rio Props*., 284 F.3d at 1018. ("When faced with an international e-business scofflaw,

playing hide-and seek with the federal court, e-mail may be the only means of effecting service of process")).

### B. The Proposed Alternate Methods of Service Comport with Due Process

"Even if facially permitted by Rule 4(f)(3), a method of service must also comport with constitutional notions of due process." *Rio Props.*, 284 F. 3d at 1016. Compliance with the notions of due process requires that the methods of service be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* (quoting *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950)). Messages sent via online marketplaces, such as Amazon, Temu, Ebay or Walmart are reliable and directly connected to the platform where the infringement is occurring. E-mail is trackable and reliable. Further, if necessary third-party services that secure, certify, and confirm transmission, delivery, and potentially even opening of e-mails can be used. E-mail and electronic messages are also inexpensive and easily resent over a series of days to increase the chance that they are received and reviewed. *See Rio Props.*, 284 F.3d at 1016 (listing email among the wide variety of Court authorized means of service).

The central question under the due process analysis is whether the proposed methods of service are reasonably calculated to provide notice. Here, service on the Defendants by e-mail and by posting on the Publication Website will satisfy due process by apprising them of the action and giving them the opportunity to answer Plaintiff's claims against them. Based upon Plaintiff's investigation, each Defendant has at least one form of electronic means of contact, demonstrating that this means of contact is not just effective, but the most reliable means of communicating with that Defendant, and consequently, the most reliable means of providing Defendants with notice of this action. [See Brees Decl. ¶¶ 7, 10, 11]. Plaintiff further argues that the requested alternate

service in the present case is appropriate and comports with constitutional notions of due process, particularly given Defendants' decisions to conduct their illegal businesses via their Online Stores anonymously over the Internet.

Lastly, electronic service is not only appropriate but necessary in this case because the Defendants have almost certainly provided false/incomplete names and/or physical address information in their registrations for their Online Stores in order to conceal their locations and avoid liability for their unlawful conduct. Because it is impossible to verify that any address provided to the Online Platform is accurate, and infringers often conceal their addresses to frustrate enforcement, the most effective service will be accomplished through e-mail and posting because the only information that can be confirmed with certainty is the account where the Defendants receive payment for their illegal activities. As such, the Defendants are best served at that email to ensure that they receive fair notice of the lawsuit, thereby guaranteeing each Defendant due process and the opportunity to be heard and respond.

### C. Service of Process Via Electronic Means Is Not Prohibited by International Agreement.

To obtain relief under Rule 4(f)(3), plaintiff need "only to demonstrate that the facts and circumstances of the present case necessitated the district court's intervention." *Id*.at 1016. *Rio Properties* held "without hesitation" that e-mail service on an online business "was constitutionally acceptable." *Id*. at 1017. The Court reached this conclusion because—as in this case—the defendant conducted business over the Internet, used email regularly, and encouraged parties to contact it via-email. *Id*. Rule 4(f)(3) allows a court to order alternative service upon a foreign defendant through any means not prohibited by international agreement. *Id*. at 1014. To establish that service under Rule 4(f)(3) is appropriate in a given case, plaintiff must also show that the alternative method "comport[s] with constitutional notions of due process," meaning that service

must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.*at 1016-17 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

A number of Courts, including the Northern District of Illinois, have held that alternate forms of service pursuant to Rule 4(f)(3), including e-mail service, are appropriate and may be the only means of effecting service of process "when faced with an international e-business scofflaw." *Rio Props.*, 284 F.3d at 1018; *see also MacLean-Fogg Co. v. Ningbo Fastlink Equip. Co., Ltd.*, No. 1:08-cv-02593, 2008 WL 5100414, *2 (N.D. Ill. Dec. 1, 2008) (holding e-mail and facsimile service appropriate); *Popular Enters., LLC v. Webcom Media Group, Inc.*, 225 F.R.D. 560, 563 (E.D. Tenn. 2004) (quoting *Rio*, 284 F.3d at 1018) (allowing email service); *Juniper Networks, Inc. v. Bahattab*, No. 1:07-cv-01771-PLF-AK, 2008 WL 250584, *1-2, (D.D.C. Jan. 30, 2008) (citing *Rio*, 284 F.3d at 1017-1018; other citations omitted) (holding that "in certain circumstances...service of process via electronic mail...is appropriate and may be authorized by the Court under Rule 4(f)(3) of the Federal Rules of Civil Procedure").

The Fifth Circuit has approved of service by email under Rule 4(f)(3) in circumstances similar to the facts here. *Nagravision SA v. Gotech Int'l Tech. Ltd.*, 882 F.3d 494, 498 (5th Cir.), cert. denied, 139 S. Ct. 480, 202 L. Ed. 2d 376 (2018). In *Nagravision*, the plaintiff had only an e-mail address obtained from a pirate-TV server during expedited discovery; with permission of the District Court, the plaintiff effected service by email. *Id*. at 498. The Fifth Circuit affirmed the validity of service by "other means," i.e., e-mail, pursuant to Rule 4(f)(3):

> Rule 4 permits service on foreign defendants "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents" and "by other means not prohibited by international agreement, as the court orders." Service here was court-ordered email service under Rule 4(f)(3), and Gotech has not shown that such service is prohibited by international agreement.

> Service was therefore proper. Overlooking Rule 4(f)(3) entirely, Gotech argues that the service did not comply with the Hague Convention and Rule 4(f)(1). This argument misses the mark because service was not effected pursuant to the Hague Convention, and that agreement does not displace Rule 4(f)(3).

*Id*. at 498 (emphasis added). *Nagravision* notes the distinction between Rule 4(f)(3) and the Hague Convention: the Hague Convention is not the only means of effecting service on a Chinese or foreign defendant. *Id*.; accord *Microsoft Corp. v. Goldah.com Network Tech. Co*., No. 17-CV-02896-LHK, 2017 WL 4536417, at *3–4 (N.D. Cal. Oct. 11, 2017) ("[Chinese] Defendants' claim incorrectly assumes that the Hague Convention is the only means of effecting service."). Because Rule 4(f)(3) is an equally favored method of service on foreign defendants, the Court should permit service on the Defendants here through "other means." See *Rio Props*., 284 F.3d at 1015.

Based upon the contact information provided in connection with the Defendants' Online Stores, Plaintiff has good cause to suspect Defendants are residing in and/or operating from the People's Republic of China ("China") or other foreign countries and/or redistribute products from sources in those locations. [Brees Decl. ¶ 8]. Unfortunately, there is little that can be done to verify the accuracy of the addresses the Defendants provided to the Online Platform, because the Defendants provide either result in no match at all, a partial match which suggests the address is incomplete or has been fabricated to look like a legitimate address district, or the address does not correspond to an address that would be suitable for a seller of the Infringing Products. [Brees Decl. ¶ 10]. It is also highly unlikely that any of the Defendants reside outside of China or Hong Kong, because the supply chains, manufacturing facilities, and counterfeit networks that produce the infringing products are located in China. Therefore, since it is impossible to verify that any address provided to the Online Platform is accurate, and infringers often conceal or falsify their addresses to frustrate enforcement, the most effective service will be accomplished through e-mail and website posting.

11

While the appearance of Chinese defendants might raise concerns over whether authorization of electronic service of process is consistent with the provisions of the Hague Convention on the Service Abroad of Judicial and Extra Judicial Documents in Civil and Commercial Matters (the "Hague Convention"), however, the United States and China are both signatories. [Brees Decl. ¶ 14]. Article 10 to the Hague Convention allows service of process through means other than a signatory's Central Authority, such as "postal channels" and "judicial officers," provided the State of destination does not object to those means. *See* Hague Convention, Art. 10, 20 U.S.T. 361 (1969). China has objected to the alternative means of service outlined in Article 10 of the Convention. [Brees Decl. ¶ 14]. However, that objection is specifically limited to the means of service enumerated in Article 10, and China has not expressly objected to service via e- mail or website posting. [*Id.*].

Consequently, China's objection to the means of alternative service provided in Article 10 is no bar to court-directed service and does not prevent this Court from authorizing alternative service of process via e-mail or website posting. *Elsevier, Inc. v. Siew Yee Chew*, 287 F. Supp. 3d 374, 379 n.2 (S.D.N.Y. 2018) ("[P]laintiffs' requested alternative means of service does not violate the Hague Convention. While China has objected to service by postal channels under Article 10 ... courts have routinely recognized that such objections do not extend to service by email."); *Neck Hammock, Inc. v. Danezen.com*, No. 2:20-CV-287, 2020 WL 6364598, at *4–5 (D. Utah Oct. 29, 2020) (unpublished) (concluding that "email service is not prohibited by international agreement," even though China had objected to service by postal channels under Article 10 of the Hague Convention, and "email service can comport with constitutional notions of due process"); *DP Creations, Inc. v. Reborn Baby Mart*, No. 2:21-CV-00574-JNP, at *15 (D. Utah Nov. 22, 2021) (unpublished) (concluding that "[s]ervice by email is not prohibited by international agreements"

and noting that "[i]n particular, the 'Hague Convention does not expressly prohibit service by email.'"); *Richmond Techs., Inc. v. Aumtech Bus. Solutions*, Case No. 11-CV-02460-LHK, 2011 U.S. Dist. LEXIS 71269 (N.D. Cal. July 1, 2011) ("[N]umerous courts have authorized alternative service under Rule 4(f)(3) even where the Hague Convention applies. This is true even in cases involving countries that, like India, have objected to the alternative forms of service permitted under Article 10 of the Hague Convention.").

Therefore, for each Defendant, service as requested is appropriate under the Hague Convention because China has not objected to service by e-mail or posting. Additionally, authorizing service of process via e-mail and/or electronic publication will benefit all parties and the Court by ensuring that the Defendants receive prompt notice of this action, thus allowing this action to move forward expeditiously. Absent the ability to serve Defendants in this manner, Plaintiff will almost certainly be left without the ability to prosecute this action expeditiously or to pursue this matter to a complete final judgment.

## IV.    <u>CONCLUSION</u>

Plaintiff has demonstrated sufficient grounds to justify the Court authorizing alternate, electronic service of process on the Defendants. Doing so is wholly consistent with the constitutional due process requirements, specifically targeted to provide the Defendants with the most effective and expeditious notice of these proceedings, and such service means are not prohibited under the Hague Convention. Accordingly, Plaintiff respectfully requests this Court grant its *ex parte* Motion and authorize service of the Complaint, Summons, and all filings and discovery in this matter upon each of the Defendants in this action:

1.    Plaintiff respectfully requests this Court's permission to serve Defendants via e-mail and electronic publication. In accordance with this request, Plaintiff moves for issuance of a

single original summons[1] in the name of "The Individuals, Corporations Limited Liability Companies, Partnerships and Unincorporated Associations Identified in Schedule A" that shall apply to all Defendants, and be electronically served:

2.      via e-mail, with the relevant documents attached, and providing the URL to Plaintiff's designated website to each of the Defendants via the e-mail address provided by that Defendant as part of the data related to its registration for its Online Store, including customer service e-mail addresses and onsite contact forms; and/or

3.      via website by publicly posting a copy of the Complaint, Summons, and all filings and discovery in this matter on Publication Website appearing at the URL: http://blointernetenforcement.com.

Dated: October 21, 2025                          Respectfully Submitted,

                                                 By: */s/ William R. Brees*
                                                 William R. Brees (Bar No. 98886)
                                                 william@bayramoglu-legal.com
                                                 **BAYRAMOGLU LAW OFFICES LLC**
                                                 233 S. Wacker Drive, 44th Floor, Suite 100
                                                 Chicago, IL 60606
                                                 Telephone: (702) 462-5973
                                                 Fax: (702) 553-3404

                                                 *Attorneys for Plaintiff*

---

[1] The Advisory Committee Notes to the 1993 Amendment to Rule 4(b) states, "If there are multiple defendants, the Plaintiffs may secure issuance of a summons for each defendant or may serve copies of a single original bearing the names of multiple defendants if the addressee of the summons is effectively identified." Fed. R. Civ. P. 4(b) advisory committee notes (1993).